UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHRISTINE PANZARINO,<br><br>Plaintiff,<br><br>v.<br><br>THE GOODKIND GROUP, LLC,<br>YUKI TSAROYA, JOHN DOES 1-<br>5, and DOE CORPORATIONS 1-5,<br><br>Defendants. | Case No: 8:25-cv-00968-WFJ-AAS |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS I, III & IV OF PLAINTIFF'S
AMENDED COMPLAINT**

COMES NOW, Plaintiff, CHRISTINE PANZARINO ("Plaintiff"), by and

through her undersigned counsel, and hereby files her Response and Opposition to

Defendants, THE GOODKIND GROUP, LLC and YUKI TSAROYA

("Defendants") Motion to Dismiss Counts I, III and IV of Plaintiff's Amended

Complaint ("Motion"), and, in support thereof, states as follows:

Defendants' Motion is not well-taken, and must be denied in its entirety.

In moving for partial dismissal of Plaintiff's amended complaint, Defendants

misstate the protections afforded by both the Family Medical Leave Act ("FMLA")

and the New York State Human Rights Law, rendering their motion fatally defective.

1

The Family Medical Leave Act obligates employers to notify employees of their eligibility to take FMLA leave within five business days, and an employer's failure to notify an employee about her right to take FMLA leave constitutes an interference with FMLA rights and prohibits forcing employees to use other forms of leave. FMLA also prohibits conduct which will frustrate an employee's opportunity to take ongoing FMLA-protected leave, such as here. Further, Defendants incorrectly assert that it "restored" Plaintiff to her position when they terminated her less than one week later.

Defendants also misconstrue the holding in *Hoffman* arguing that this Court does not have subject matter jurisdiction to hear Plaintiff's NYSHRL claims. The NYSHRL does not require protected employees to reside or work in New York at the time discrimination or retaliation occurs.

Based on the foregoing, Defendants' Motino must be denied in its entirety.

## FACTUAL SUMMARY

The following facts, taken from the Complaint, which is the only factual record on this Motion, and must be taken as true:

Panzarino worked for The Goodkind Group as a recruiter from, in or around August 10, 2020, until May 19, 2023. Amended Compl. ¶ 2. Panzarino worked in-person at Goodkind's Melville, New York office from the beginning of her

employment until late June 2022, when Goodkind permitted her to report virtually to their Melville, New York office from her home in Manatee County, Florida. Id.

Panzarino notified Goodkind of an FMLA and NYSHRL protected medical condition when, on May 3, 2023, she was admitted to a local hospital and diagnosed with Atrial Fibrillation, which required in-patient treatment. Amended Compl. ¶ 17-18. Panzarino's husband notified Goodkind HR *that same day* and said that Panzarino would need *ongoing* medical leave. Amended Compl. ¶ 19.

Panzarino again updated Goodkind on May 7, 2023, four (4) days after she was admitted, and stated that she "did not know" what her medical condition would require beyond her hospital visit, at which point Goodkind HR responded that they were "including [the benefits team] so that they can get the FMLA paperwork started with you." The Goodkind benefits team did not send FMLA paperwork to Panzarino or communicate with her at all about her ongoing needs and right to take FMLA leave during and after her discharge. Amended Compl. ¶22-23.

Rather, on May 19, 2023, one week after Panzarino returned to work and still without any communication regarding her ongoing FMLA rights, Goodkind terminated Panzarino. Amended Compl. ¶22, 24-25.

Goodkind terminated Panzarino knowing that Panzarino already requested ongoing medical leave, on May 3, 2023, stated that she did not yet know what her

3

needs may be on an ongoing basis on May 7, 2023. Amended Compl. ¶ 19, 22-23, and 26.

Goodkind, and specifically Defendant Tsaroya, added a pretextual excuse for her termination, stating that Panzarino was being let go because she worked from home rather than return to the Goodkind Long Island office, in Melville, New York, in person twice per week. Amended Compl. ¶ 32.

Goodkind committed these intentional and willful acts in violation of Panzarino's rights guaranteed to her by, among other things, the statutory prohibitions against interference (and retaliation) found within the Family Medical Leave Act and discrimination and retaliation found within the New York State Human Rights Law, where Panzarino predominantly worked and where she reported into even at the time of her termination. Amended Compl. ¶ 14, 32-38.

## STANDARD OF REVIEW

When ruling on a motion to dismiss, the Court must accept as true all the factual allegations contained in the complaint; the complaint must only meet the minimum requirements of stating a plausible cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring only that Plaintiff "state a claim to relief that is plausible on its face."). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (citations omitted).

## ARGUMENT

The allegations set forth in the Complaint, and reasonable inferences drawn therefrom, clearly set forth valid causes of action despite Defendants' assertions to the contrary. Accordingly, Defendants' Motion to Dismiss should be denied.

## I.     The Complaint Sufficiently Pleads FMLA Interference

The Amended Complaint sufficiently pleads FMLA interference in two ways. First, Plaintiff pleads that Defendants interfered with her rights when they terminated Plaintiff after she notified them that she had a need and intent to use FMLA leave in the future, which prevented Plaintiff from utilizing *any* of her FMLA leave time. Second, Plaintiff sufficiently pleads that Defendants interfered with her FMLA rights by failing to provide required notices to Plaintiff.

Defendants misstate the law and factual allegations in the Amended Complaint (which, contrary to Defendant's assertions, were also alleged in the earlier Complaint) when arguing that "Goodkind cannot interfere with a hypothetical potential need for FMLA leave." D's MOL p. 10. The FMLA protects an employee who gives "notice of an intent to use FMLA leave in the future." *Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265, 1276 (11th Cir. 2020) (*citing Pereda v. Brookdale Senior Living Cmtys., Inc.,* 666 F.3d 1269, 1274-75 (11th Cir. 2012)). An employee

need not explicitly mention the FMLA when giving notice to her employer. *See Cruz v. Publix Super Mkts., Inc.,* 428 F.3d 1379, 1383 (11th Cir.2005) ("An employee is not required to assert expressly her right to take leave under the FMLA."). Where a need for leave and duration of leave is not foreseeable, an employee need only "provide sufficient information to her employer to reasonably determine whether the FMLA may apply to the leave request." *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015) ( quoting 29 C.F.R. § 825.303(b)).

Here, Defendants acknowledge that Panzarino adequately alleges that she had an unforeseen, FMLA-protected medical condition, Atrial Fibrillation, which required immediate in-patient hospital care. D's MOL p.7; Amended Compl. ¶ 17-18. However, Defendants ignore that Panzarino alleged that on May 7, 2023, she notified Goodkind that she did not yet know what leave would be required beyond her discharge. Amended Compl. 22-23. Defendants cannot pretend now that Panzarino failed to notify that her need for leave would continue into the future, as Panzarino even alleges that she received a response email from Defendants indicating that their benefits team would "get the FMLA paperwork started," which they failed to follow through. It is undisputed that at the time Panzarino was discharged from the hospital and returned to work, she had not exhausted her FMLA leave time (as Defendants had not even sent Panzarino the necessary paperwork to begin the process of using her FMLA leave time). When Defendants terminated her

6

one week later, they unlawfully interfered with Panzarino's ability to use her FMLA leave in the future. As a result, this aspect of Defendants' motion to dismiss fails.

In its motion to dismiss, Defendants further cursorily dismiss the fact that they failed to provide Plaintiff with notice about the FMLA as required under the Act, stating "failure to provide FMLA paperwork does not constitute a harm under the FMLA, particularly if the employee is afforded the requested leave." Defendant cites to *de Bello v. Alutiiq, LLC* 2023 WL 5042951, at *5(M.D. Fl. Aug. 8, 2023) in support of their assertion. But *de Bello*, which this Court decided, is distinguishable. First, unlike here, the plaintiff in *de Bello* resigned while on leave, which ended her need for additional medical leave. Additionally, unlike *de Bello*, Panzarino notified her employer that she was in the hospital, and therefore had an unforeseen need for leave, and further notified Defendants that she did not know what leave would be needed beyond her hospital stay. Finally, the defendant in *de Bello* did not state that it would provide FMLA paperwork to the plaintiff and then completely fail to follow through. Here, Plaintiff was not given written notice of her FMLA rights, or the application paperwork to utilize them, which harmed her. She did not have the statutorily required notice of the job-protected duration of time she could take to recuperate following her discharge from the hospital and still did not know the process of requesting additional time needed to recover when she was terminated. She was instead placed on paid vacation, which does not offer the same leave

durations or job protections as FMLA leave. Therefore, in this case, the separate allegation that Defendants failed to provide the requisite notice and FMLA paperwork did cause harm, unlike potentially other instances where Plaintiffs were truly afforded all the time they needed, returned to work, and did not otherwise suffer any harm. Therefore, Plaintiffs allegations that Defendants failed to provide any notice of her FMLA rights should be considered in totality with its failure to permit Plaintiff the right to use any of her noticed, future FMLA leave when they terminated her, as unlawful interference.

## II.    The Complaint Sufficiently Pleads Protection Under NYSHRL

In moving to dismiss Plaintiff's third and fourth causes of action, which allege violations of the New York State Human Rights Law ("NYSHRL"), Defendant incorrectly asserts that the *Hoffman* "impact" test (from *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 933 N.E.2d 744, 746-47, 907 N.Y.S.2d 145 (N.Y. 2010)) precludes subject matter jurisdiction for Panzarino's NYSHRL claims. However, Defendants completely ignore *Syeed v. Bloomberg L.P., No. 20, 235 N.E.3d 351, 41 N.Y.3d 446, 2024 N.Y. LEXIS 293, 211 N.Y.S.3d 819, 2024 WL 1097279 (N.Y. Mar. 14, 2024)(*noting that jurisdiction exists when "a nonresident who has been discriminatorily denied a job in New York City or State loses the chance to work, and perhaps live, within those geographic areas.") *Syeed* is the more recent

8

landmark New York Court of Appeals decision that clarified the court's earlier decision in *Hoffman*.

In *Syeed*, the plaintiff worked from Defendant Bloomberg L.P.'s Washington D.C. office and, after experiencing discrimination, applied for internal transfer to several roles in the Bloomberg New York office, which were rejected. In determining that the non-resident plaintiff was protected from discrimination by the New York City and State Human Rights Laws, the *Syeed* court "recognized that a ruling for defendant would serve to immunize employers from liability under the Human Rights Laws for discriminatory conduct pertaining to New York City- or State-based jobs even when the discriminatory conduct has an impact in New York…." *Syeed* 41 N.Y.3d at 454. Therefore, the *Syeed* court concluded that the New York legislature and city council did not intend "to give New York employers a license to discriminate against nonresident prospective employees" and, thus, "did not adopt such a narrow construction of the statutes." *Id.*

Using the *Syeed* framework, Plaintiff claims an impact in New York State. Here, Panzarino alleges she worked in-person, in the state of New York for two of the three years that she worked for Defendants. Amended Compl. ¶ 2. She also worked remotely from Florida during the Covid-19 pandemic and was working remotely when she was terminated. *Id.* But importantly, Defendant Goodkind told Panzarino that she was terminated because she would not return in-person to their

9

Long Island, New York office twice per week. Among other ways in which Panzarino alleges Defendants' excuse for her termination is pretext, Panzarino alleges that Goodkind did not ask her to return to work in person until using it as their excuse for her termination. Amended Compl. ¶ 32. Therefore, Panzarino argues that Goodkind denied her the opportunity to return to work in Long Island, New York twice per week to keep her gainful employment. As a result, Panzarino was protected by the New York State Human Rights Law at the time Goodkind discriminated against her for their unlawful perception of her disability and retaliated against her by terminating her employment. Defendants' arguments to the contrary should be rejected by this Court. *See also Shiber v. Centerview Partners LLC*, 2024 U.S. Dist. LEXIS 116832 (S.D.N.Y. July 2, 2024) (noting the New York Court of Appeals' "refusal to immunize employers from liability under the Human Rights Laws for discriminatory conduct pertaining to New York City- or State-based jobs even when the discriminatory conduct has an impact in New York.").

The *Shiber* decision is particularly illustrative of Panzarino's claims here. *Shiber* involved a New Jersey resident plaintiff who was hired to work in-person from defendant Centerview's New York City office but instead she lived and worked remotely for the defendant only in New Jersey during the Covid-19 pandemic. After she was terminated for an allegedly discriminatory reason, the

*Shiber* plaintiff alleged that she was protected by the New York City Human Rights Law because she expected to work at Centerview's New York City offices at some point in the future, and would have done so if she was not terminated, like other similarly situated coworkers who allegedly returned to work in the New York City office. The *Shiber* court agreed. In other words, like *Shiber*, Panzarino was denied the opportunity to "have [again] worked in New York but for the termination." *Shiber* at *11.

Like in *Shiber,* Defendants' *Hoffman* argument here is misplaced. *Hoffman* involved a plaintiff who was a Georgia resident who never lived, worked or even possibly worked from New York and who only argued she was protected by the New York human rights laws because she was fired from her role in the state of Georgia role by management in New York City.  These departures distinguish *Hoffman* from Panzarino's experiences here. As a result, Defendants arguments should be rejected.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Goodkind's Motion to Dismiss.

Dated this 15th day of July 2025.


### ***(Remainder of page left intentionally blank)***

**RICHARD CELLER LEGAL, P.A.**
***/s/ Noah E. Storch***
Noah E. Storch, Esq.
Florida Bar No. 0085476
7951 SW 6th Street, Suite 316
Plantation, FL 33324
Tel: (866) 344-9243
Facsimile: (954) 337-2771
noah@floridaovertimelawyer.com

KOVEL LAW PLLC
/s/ Daniel H. Kovel
Daniel H. Kovel
Admitted Pro Hac Vice
14 East 96th Street, Suite 3
New York, New York 10128
Tel: (646) 397-1729
dkovel@kovel-law.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of July 2025, I electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF system, which

I understand will provide a copy of same to all counsel of record.

***/s/ Noah E. Storch***
Noah E. Storch, Esq.

12