UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTINE PANZARINO,**

    Plaintiff,

v.                                                                  Case No. 8:25-cv-00968-WFJ-AAS

**THE GOODKIND GROUP, LLC,**
and **YUKI TSAROYA,** individually,

    Defendants.

_____/

## ORDER

Before the Court are Defendants the Goodkind Group, LLC ("Goodkind") and Yuki Tsaroya's ("Tsaroya") Motion to Dismiss Counts III & IV of the Amended Complaint. Dkt. 44. Plaintiff Christine Panzarino ("Panzarino") has responded in opposition, Dkt. 45, and Defendants replied. Dkt. 46. After careful consideration, the Court grants Defendants' partial motion to dismiss for lack of subject matter jurisdiction.

## BACKGROUND

This dispute arises from Plaintiff Panzarino's termination by Defendant Goodkind, a New York-based company, while Panzarino was working remotely from Florida. From August 10, 2020, until May 19, 2023, Panzarino worked for Goodkind Group as a recruiter. Dkt. 43 ¶ 16. At first, Panzarino worked in person at Goodkind's Melville, New York office before transitioning to remote work in late

June 2022, when Goodkind permitted her to report virtually from her home in Manatee County, Florida due to the COVID-19 pandemic. *Id.*

On May 3, 2023, Panzarino was admitted to a local hospital and diagnosed with atrial fibrillation, which required inpatient treatment. *Id.* ¶ 19. Panzarino spent approximately eight days in the hospital, where she underwent multiple medical procedures related to her diagnosis. *Id.* ¶ 20. On the day of her admission to the hospital, Panzarino's husband notified Goodkind's human resources department that Panzarino would need ongoing medical leave. *Id.* ¶ 21. A couple of days later, on May 7, 2023, Panzarino again updated Goodkind by emailing the Vice President of Human Resource, Kris Bryan, stating that Plaintiff was still recovering in the hospital because "they're trying to regulate my heart rate" and "[she] will be here tomorrow and [she didn't] know be on (sic) that." *Id.* ¶ 22. Bryan responded, stating that she was "including [the benefits team] so that they can get the FMLA paperwork started with you." *Id.* ¶ 23. Plaintiff alleges that the Goodkind benefits team did not send Family Medical Leave Act ("FMLA") paperwork or communicate about her right to take FMLA leave. *Id.* ¶ 24.

On May 11, 2023, Panzarino was discharged from the hospital and returned to work on May 12, 2023. *Id.* ¶ 26. On May 19, 2023, one week after Panzarino returned to work, Defendant Goodkind terminated Panzarino. *Id.* ¶ 27. During the termination phone call with Plaintiff, Defendant Tsaroya admitted that Panzarino

had been a good recruiter, but told Panzarino that the company "could not carry" her any further. *Id.* ¶¶ 30–31.

Importantly, Plaintiff contends that Defendant Tsaroya "added a pretextual excuse for her termination, stating that Panzarino was being let go because she worked from home" rather than returning to in-person work at Goodkind's office in Melville, New York, twice per week. *Id.* ¶ 34. Panzarino notes that Defendants never asked her to return to the office before her termination, and names several co-workers "who reported into the New York office but worked remotely on an indefinite basis." *Id.* ¶¶ 35–36. As such, Plaintiff argues "Defendants terminated Plaintiff for the pretextual reason [because] she failed to return to work in their Melville, New York office twice per week[.] Defendants denied Panzarino the opportunity to continue her job in New York State[,] and the chance to work, and perhaps live, within New York State." *Id.* ¶ 38.

On October 7, 2024, Plaintiff initially brought a three-count complaint against Defendants, alleging interference and retaliation violation of the FMLA, 29 U.S.C. § 2601, *et seq.*, and violation of the New York State Human Rights Law, N.Y. Executive Law § 296 ("NYSHRL"), in the Eastern District of New York ("EDNY"). Dkt. 1. On December 10, 2024, Defendants submitted a letter to Judge Joan N. Azrack to request a pre-motion conference in anticipation of filing a motion to dismiss Plaintiff's Complaint for improper venue or, in the alternative, to transfer

venue pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404. Dkt. 9 at 1. Plaintiff Panzarino subsequently consented to the case being transferred to the Middle District of Florida, and the instant case was transferred to this Court on April 17, 2025. Dkts. 16, 17, 18.

On May 21, 2025, Panzarino filed an Amended Complaint, asserting claims of FMLA interference, FMLA retaliation, and disability discrimination in violation of the NYSHRL against Goodkind, and a single claim for aiding and abetting disability discrimination in violation of the NYSHRL against Tsaroya. Dkt. 25. On June 13, 2025, Defendants filed a Motion to Dismiss Counts I, III, and IV of the Complaint, Dkt. 28, which the Court granted in part and denied in part. Dkt. 42. As to Counts III & IV under the NYSHRL, this Court ordered that "the amended complaint must more specifically state and list out how the New York statute applies to the Manatee County, Florida resident, affording that resident a cause of action." *Id.*

On August 7, 2025, Plaintiff Panzarino filed her Second Amended Complaint, re-alleging against Defendant Goodkind her claims of FMLA interference (Count I), retaliation (Count II), and disability discrimination under the NYSHRL (Count III). Dkt. 43. As to Defendant Tsaroya, Plaintiff realleged her claim of aiding and abetting disability discrimination under the NYSHRL (Count IV). Dkt. 43. On August 21, 2025, Defendants filed the instant partial motion to dismiss, seeking dismissal of

NYSHRL claims in Counts III & IV for lack of subject matter jurisdiction. *See* Dkt. 44.

## LEGAL STANDARD

Subject matter jurisdiction must be established before a case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). This is because "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a federal court lacks jurisdiction in a case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (first citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799), then citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citation modified). A defendant may challenge subject matter jurisdiction facially or factually. *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016). A facial attack requires the court to examine the complaint, taken as true, to determine whether the plaintiff has sufficiently alleged a jurisdictional basis. *See id.* at 1274. The Court construes Defendants' challenge to subject matter jurisdiction as a facial attack. Dkt. 44 at 6.

**DISCUSSION**

Defendants' motion to dismiss seeks dismissal of Counts III & IV, arguing "this Court lacks subject matter jurisdiction over Panzarino's New York state law claims because Panzarino's allegations make it clear she was not physically present and working from the state of New York at the time of her termination and, therefore, outside the jurisdiction of New York State and the reach of its statutes." Dkt. 44 at 2. Plaintiff responds, contending that Defendants "incorrectly asserts that the *Hoffman* 'impact' test . . . precludes subject matter jurisdiction for Panzarino's NYSHRL claims[, and] Defendants incorrectly assert that Plaintiff must be present in the State of New York at the time the discrimination or retaliation occurred to obtain statutory protection." Dkt. 45 at 5. For the reasons discussed below, the Court finds that it lacks subject matter jurisdiction over Counts III & IV based on the allegations in the Second Amended Complaint.

When making this decision, the Court will apply New York substantive law. When a defendant transfers venue under 28 U.S.C. § 1404(a), the venue change will not alter the substantive law to be applied in the case. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983) ("The district court correctly noted that because this diversity action was transferred from the Central District of California to the Middle District of Florida, it was to apply the choice of laws principles on

which the Central District of California would have relied."). Here, Defendants transferred this case to the MDFL under 28 U.S.C. § 1404(a) following Plaintiff's consent. Dkts. 9, 16. As such, because this case was transferred from the EDNY and the parties presume the substantive law of New York controls the NYSHRL claims, this Court does the same. The Court dismisses Counts III & IV for lack of subject matter jurisdiction because the New York Court of Appeals has stated that a claim that fails to satisfy the impact requirement is "properly dismissed . . . for want of subject matter jurisdiction." *Hoffman v. Parade Publications*, 933 N.E.2d 744, 748 (N.Y. 2010).

To bring a discrimination claim under the NYSHRL, a plaintiff must establish some impact from the allegedly discriminatory conduct within the State's boundaries. *See Syeed v. Bloomberg L.P.*, 235 N.E.3d 351, 354 (N.Y. 2024); *Hoffman*, 933 N.E.2d at 746. Following *Syeed*, there are two ways in which a nonresident may satisfy the "impact requirement" for an NYSHRL claim: "(1) working in New York or (2) establishing that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries." *Syeed*, 235 N.E.3d at 354. The *Syeed* court explained that one way to demonstrate impact is by showing that a defendant's conduct discriminatorily denied a plaintiff the opportunity to work in and potentially live in New York City or State. *Id.* at 355. Notably, the plaintiff in *Syeed* was bringing a failure to promote or hire claim under

the NYSHRL, as she sought a transfer to a position based in New York City but was allegedly denied due to her race and sex. *Id.* at 353. On certification from the Second Circuit Court of Appeals, the New York Court of Appeals reasoned that "[t]he prospective employee personally feels the impact of a discriminatory refusal to promote or hire in New York City or State, because that is where the person wished to work (and perhaps relocate) and where they were denied the chance to do so." *Id.* at 355.

Defendants point out in their motion to dismiss that *Syeed* also explicitly noted that "failure to promote or hire" cases are "distinct" from "discriminatory termination case[s]" like the one Panzarino brings in the instant proceeding. Dkt. 44 at 10 (citing *Syeed*, 235 N.E.3d at 355). As such, Defendants contend that "*Syeed* is inapplicable because Panzarino has not asserted any failure to hire or promote claim. She has not alleged that she applied for any promotion or transfer within the company, regardless of location. . . . The *Hoffman* impact test remains the proper framework to examine Panzarino's discriminatory termination claims." *Id.*

Defendants read *Syeed* too narrowly and ignore the considerable number of federal courts finding that *Syeed*'s reasoning also applies in the discriminatory termination context. As another district court has already articulated:

> *Syeed*'s reasoning applies in the unlawful-termination context, because the Court of Appeals [of New York] made clear that the discriminatory denial of "the chance to work, and perhaps live" within New York City constitutes an impact within New York City. *Syeed*, 235 N.E.3d at 355.

8

> The Court of Appeals distinguished a case finding no impact in the context of an unlawful-termination claim—[*Hoffman v. Parade Publications*, 15 N.Y.3d 285, 289, 933 N.E.2d 744 (N.Y. 2010)]—because the plaintiff there had alleged no such denial. Specifically, the *Syeed* court emphasized that the plaintiff in *Hoffman*, in addition to not being a New York City inhabitant, "did not seek to become one" and instead "wished to retain his Georgia employment." *Syeed*, 235 N.E.3d at 355.

*Ronen v. FlipCX, Inc.*, No. 21-CV-2732 (RPK) (RML), 2025 WL 2590393, at *3 (E.D.N.Y. Sept. 8, 2025). Consistent with this understanding of *Syeed,* numerous New York district courts have found that a plaintiff can adequately plead the "impact requirement" of a discriminatory termination claim by alleging that the termination denied the nonresident plaintiff "the chance to work, and perhaps live" within New York City or State. *Syeed*, 235 N.E.3d at 355; *see Ronen*, 2025 WL 2590393, at *3; *Roddey v. KPMG L.L.P.*, No. 22-CV-7405 (VSB), 2025 WL 1104538, at *9 (S.D.N.Y. Apr. 14, 2025); *Shiber v. Centerview Partners LLC*, No. 21 CIV. 3649 (ER), 2024 WL 3274420, at *4 (S.D.N.Y. July 2, 2024); *Desiderio v. Hudson Techs., Inc.*, No. 22-CV-00541 (ER), 2025 WL 1285278, at *16 (S.D.N.Y. May 2, 2025); *eShares, Inc. v. Talton*, No. 22-CV-10987 (JGLC), 2025 WL 936921, at *16 (S.D.N.Y. Mar. 27, 2025). Thus, the question before this Court is whether Plaintiff has adequately pled the impact requirement by alleging that the termination denied Panzarino the opportunity to work or live in New York. *See Syeed*, 235 N.E.3d at 355 ("[A] nonresident who has been discriminatorily denied a job in New York City or State loses the chance to work, and perhaps live, within those geographic areas.").

Here, accepting the factual allegation in the Second Amended Complaint as true, Plaintiff has failed to sufficiently plead the impact requirement for her NYSHRL claims. The several factual allegations in the complaint make it clear that Plaintiff never sought a "chance to work, and perhaps live, within" New York. *Id.* First, Plaintiff makes it clear that while she was initially hired and worked in New York from August 2020 to June 2022, she moved to Manatee County, Florida, of her own volition, after Defendant Goodkind permitted its workforce to work remotely out of state. Dkt 43 ¶ 16. Second, during Plaintiff's entire medical episode, she never alleges that she intended to move back to New York once she got out of the hospital. *Id.* ¶¶ 19–26. Indeed, once Plaintiff was discharged from the hospital, she returned to remote work in Florida. *Id.* ¶ 26. Third, and perhaps most importantly, Plaintiff alleges that Defendant Tsaroya's decision to terminate her employment due to a failure to return to in-person work at Goodkind's New York office was "pretextual." *Id.* ¶¶ 34, 38.

When considering these factual allegations together, Plaintiff's move to Florida was not a temporary situation due to the COVID-19 pandemic, but a permanent move. Plaintiff, like several other Goodkind coworkers who worked remotely from home on an "infinite basis," *id.* ¶ 36, had no intention of returning to New York to work in person. Nor does the Second Amended Complaint allege any facts showing that Panzarino was willing, planning, or about to move back to New

York after a year of living and working in Florida. *See Ronen*, 2025 WL 2590393, at *3 (finding the plaintiff adequately pled the impact requirement since "plaintiff credibly testified that he always intended to return to New York City just a few months after his child was born, citing as evidence the facts that he and his wife maintained their apartment lease in New York and that he and his wife kept their doctors in New York."). Put simply, during the relevant times to Plaintiff's NYSHRL claims, she lived and worked in Florida with no intention "to work, and perhaps live, within" New York. *Syeed*, 235 N.E.3d at 355; *see also Hoffman*, 933 N.E.2d at 746–47 (finding the plaintiff was not a New York resident and did not seek to become one; rather, the plaintiff was a Georgia resident who worked in Georgia and wished to retain his Georgia employment).

However, Plaintiff claims that she has satisfied the impact requirement since "Defendant Goodkind told Panzarino that she was terminated because she would not return in-person to their Long Island, New York office twice per week. . . . Therefore, . . . Goodkind denied her the opportunity to return to work in Long Island, New York[,] twice per week to maintain her valuable employment." Dkt. 45 at 7 (citing Dkt. 43 ¶ 32). Defendants respond, arguing "Panzarino cannot both allege on the one hand that there was no real requirement for her to return to and work in New York, and then simultaneously assert on the other hand that she was denied the opportunity

to return to work in person in New York in an attempt to salvage her NYSHRL claims." Dkt. 46 at 5–6.

The Court agrees with Defendants and finds that Plaintiff cannot have it both ways. Panzarino cannot allege that Defendant Tsaroya's decision to terminate her employment was "pretextual," *id.* ¶¶ 34, 38, while simultaneously claiming that Defendants denied her the opportunity to return and work in New York in order to satisfy the NYSHRL's impact requirement. By its very definition, "pretextual" means that the reason is weak, implausible, inconsistent, incoherent, or contradictory. *See Gallimore v. City of Opa-Locka, Fla.*, No. 23-12241, 2025 WL 2237313, at *4 (11th Cir. Aug. 6, 2025) (noting that in the Title VII context, a plaintiff can prove a reason is pretextual if he demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence"). When accepting Plaintiff's factual allegations as true, the Court assumes that Defendant Tsaroya's explanation was "pretextual"—i.e., false. As such, Plaintiff cannot turn around and also claim Defendants deprived her of "the chance to work, and perhaps live, within" New York when the Second Amended Complaint makes it clear that any opportunity was a lie conjured up by Defendants to justify her termination. *Syeed*, 235 N.E.3d at 355; *see* Dkt. 43 ¶¶ 34, 38 (emphasis added) ("Tsaroya also added a *pretextual excuse* for her termination,

12

stating that Panzarino was being let go because she worked from home rather than return to the Goodkind Long Island office, in Melville, New York, in person twice per week. . . . In that Defendants terminated Plaintiff for the *pretextual reason* that she failed to return to work in their Melville, New York office twice per week[.]").

Additionally, to the extent Plaintiff argues the following allegation—"Defendants denied Panzarino the opportunity to continue her job in New York State and the chance to work, and perhaps live, within New York State" (Dkt. 43 ¶¶ 38)—sufficiently alleges NYSHRL's impact requirement, the Court disagrees. Such an allegation is nothing more than "a formulaic recitation" of the impact requirement, which "will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Indeed, Plaintiff's allegation is quoting directly from *Syeed*, but fails to provide any factual allegations supporting the proposition that she intended or planned to return to New York to work or live. *See* 235 N.E.3d at 355. Because Plaintiff has no basis to qualify for the protections of the NYSHRL, this Court lacks subject matter jurisdiction over Plaintiff's NYSHRL claims in Counts III & IV and dismisses those counts. *See Hoffman*, 933 N.E.2d at 748 (holding a NYSHRL claim that fails to satisfy the impact requirement is "properly dismissed . . . for want of subject matter jurisdiction").

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants the Goodkind and Tsaroya's Motion to Dismiss Counts III & IV of the Amended Complaint, Dkt. 44, is **GRANTED without prejudice.**

2. Defendant Goodkind must file a responsive pleading to the remaining counts within **FOURTEEN (14) days** of the entry of this Order.

   **DONE AND ORDERED** at Tampa, Florida, on November 14, 2025.

   */s/ William F. Jung*
   **WILLIAM F. JUNG**
   **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record