UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTINE PANZARINO**,

    Plaintiff,

v.                              Case No. 8:25-cv-00968-WFJ-AAS

**THE GOODKIND GROUP, LLC**,
and **YUKI TSAROYA,** individually,

    Defendants.

_____/

## **ORDER**

Before the Court is Defendant The Goodkind Group, LLC's ("Goodkind")

Motion for Summary Judgment. Dkt. 60. Plaintiff Christine Panzarino ("Panzarino")

has responded in opposition, Dkt. 63, and Defendant Goodkind replied. Dkt. 66.

Upon careful consideration, the Court denies Defendant Goodkind's motion for

summary judgment.

## **BACKGROUND**

### I.    Factual History

Goodkind is a New York-based company specializing in staffing placements.

Dkt. 64 ¶ 1. Defendant Yuki Tsaroya ("Tsaroya") is the CEO of Goodkind as of

August 2022. *Id.* ¶¶ 3–4. As the CEO of Goodkind, Tsaroya manages the

administrative team, which comprises account managers and recruiters. *Id.* ¶¶ 4–5.

1

Goodkind hired Christine Panzarino as a recruiter on August 10, 2020. *Id.* ¶ 20. Panzarino was based in Goodkind's New York office until July 2022, when she moved to Florida and began working remotely. *Id.* ¶¶ 20, 43.

After being hired at Goodkind, Panzarino developed a substantial client relationship with Enzo Pharmaceuticals. *Id.* ¶¶ 39–40. Enzo was Panzarino's main client. *Id.* Around October 2022, Enzo terminated its business with Goodkind, and as a result, Panzarino lost her largest client and continued to seek placements through other general, non-exclusive positions. *Id.* ¶¶ 45–46. Around this time, Goodkind also conducted multiple rounds of layoffs due to a decrease in demand for staffing placements. *Id.* ¶¶ 15–19. Five recruiters were laid off in December 2022; one in January 2023; three in February 2023; three in March 2023; and one more in April 2023. *Id.*

In January 2023, Tsaroya informed Goodkind's Vice President of Human Resources, Kris Bryan, that Tsaroya wanted to fire Panzarino for her difficult nature and lack of productivity. Dkt. 63-9. Defendants state that Panzarino was not fired at that time because Panzarino was still responsible for collecting certain outstanding payments from Enzo; however, Panzarino denies this assertion. Dkt. 64 ¶ 52. These payments were settled in March 2023. Dkt. 63-8 at 1–2.

On May 3, 2023, Panzarino was admitted to the hospital for heart issues. Dkt. 64 ¶ 54. Panzarino's husband notified Goodkind's human resources department

("HR") that she was admitted to the emergency room and would not be at work the next day. *Id.* ¶¶ 55–57. HR notified Panzarino on May 7, 2023, of their intention to send paperwork for FMLA leave. *Id.* ¶ 59. Panzarino ultimately never received this paperwork. *Id.* ¶ 67. According to the Goodkind employee handbook, employees "must use any accrued paid time while taking unpaid FMLA leave." Dkt. 57-4 at 34. Accordingly, Panzarino was on paid leave between May 3, 2023, and May 11, 2023. Dkt. 64 ¶ 64.

From May 7, 2023, to May 12, 2023, Panzarino sent multiple updates to HR advising them of her medical situation. *Id.* ¶¶ 58, 61–62. On the morning of May 12, 2023, Panzarino notified HR that she had been discharged from the hospital and would return to work that day. *Id.* ¶¶ 62–63. On the same day, Panzarino also notified HR that she would "follow up with my doctor next week in his office." Dkt. 63-3 at 1.

On May 19, 2023, Tsaroya informed Panzarino by phone that her employment was being terminated. Dkt. 64 ¶¶ 71–72. Panzarino claims that during the call, Tsaroya mentioned that he "could not carry [her] anymore." Dkt. 63-1 at 95:21–25.[1]

---

[1] Citations to depositions refer to the pages listed in the transcript rather than the electronic pages automatically generated by CM/ECF.

## II.      Procedural History

On October 7, 2024, Panzarino brought suit against Defendants in the Eastern District of New York, alleging violations of the Family and Medical Leave Act ("FMLA") and the New York State Human Rights Law ("NYSHRL"). Dkt. 1. The case was subsequently transferred to the Middle District of Florida. Dkt. 18. On August 7, 2025, Panzarino filed the operative amended complaint asserting four counts: (1) interference under the FMLA, (2) retaliation under the FMLA, (3) disability discrimination under the NYSHRL, and (4) aiding and abetting disability discrimination under the NYSHRL. Dkt. 43.

Defendants filed a motion to dismiss the NYSHRL claims of Counts III and IV for lack of subject-matter jurisdiction, which this Court granted on November 14, 2025. Dkt. 48. On March 27, 2026, Defendants filed the instant motion for summary judgment as to the remaining FMLA claims of Counts I and II. Dkt. 60.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for

4

the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) (noting a court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party" (citation omitted)). Once the moving party satisfies its initial burden, it shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e), (c). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The court may not weigh the evidence to resolve a factual dispute; if a genuine issue of material fact exists, the court must deny summary judgment. *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

Additionally, a district court is only required to consider "the cited materials" when deciding a motion for summary judgment, Fed. R. Civ. P. 56(c)(3), and "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. . . . [D]istrict court judges are not required to ferret out delectable facts buried in a massive record[.]" *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). "[T]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

## DISCUSSION

### I.   FMLA Interference

The Family and Medical Leave Act provides, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "[T]o succeed on an FMLA interference claim an employee need only demonstrate by a preponderance of the evidence that she was entitled to an FMLA benefit that was denied." *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018) (citation omitted). "But a

technical FMLA violation alone is not enough. Rather, the employee must also 'demonstrate some harm' from the alleged interference[.]" *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (quoting *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014)). In FMLA interference claims, the employer's intent is irrelevant. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207–08 (11th Cir. 2001).

Panzarino alleges that Defendants interfered with Panzarino's exercise of her FMLA rights by "[failing to] provide necessary application paperwork to Plaintiff, and [by firing] Plaintiff before she could use FMLA leave as entitled." Dkt. 43 ¶ 49. The Court will address each argument in turn.

### a. Failure to Provide Notice under FMLA

When an employer learns that an employee's leave "may be for an FMLA-qualifying reason . . . [t]he employer must also provide notice to the employee of her eligibility for and rights under the FMLA within a certain timeframe." *Ramji*, 992 F.3d at 1243 (citing 29 C.F.R. § 825.300). "Failure to follow the notice requirements . . . may constitute an interference with . . . an employee's FMLA rights." 29 C.F.R. § 825.300(e). Once the plaintiff demonstrates a violation of the notice requirement, they must also establish harm or prejudice as a result of the employer's failure to provide notice. *See Ramji*, 992 F.3d at 1245. ("Finally, we must determine whether [the plaintiff] can demonstrate harm, or prejudice, resulting from the employer's

7

interference with her exercise (or attempted exercise) of an FMLA benefit to which she is entitled." (citation omitted)).

Here, it is undisputed that Goodkind failed to provide Panzarino with any formal notice of her FMLA rights. *See* Dkt. 64 ¶ 67. However, Panzarino does not demonstrate that Goodkind's failure to provide proper notice caused any harm or prejudice. Panzarino received all of her requested time off prior to returning to work on May 12, 2023, was paid during the entire leave, and Goodkind's failure to provide notice was never alleged to have affected Panzarino's decision-making or otherwise truncated her leave. *Id.* ¶¶ 54–69; *see also Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1122 (11th Cir. 2023) ("Under our precedent, an employee doesn't suffer harm from an employer's technical non-compliance with the FMLA's notice requirements when she receives all her requested time off and is paid for her absences." (citation omitted)); *Chandler v. Sheriff, Walton Cnty.*, No. 22-13698, 2023 WL 7297918, at *3 (11th Cir. Nov. 6, 2023) (affirming summary judgment against a plaintiff's FMLA interference claim because the plaintiff "was not denied leave, pressured to return early, or purposefully made unaware of the possibility that he could take leave"). Additionally, Goodkind's requirement that Panzarino use her accrued paid time concurrently with her unpaid FMLA leave is permissible. *See* Dkt. 57-4 at 34 ("Employees must use any accrued paid time while taking unpaid FMLA leave.");

*Strickland*, 239 F.3d at 1205 ("[T]he employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently.").

Therefore, Goodkind's failure to provide FMLA paperwork does not constitute an interference with Panzarino's FMLA rights as to Plaintiff's request for leave on May 3, 2023.

### b. Right to Commence FMLA Leave

Next, Panzarino alleges that Defendants interfered with her right to ongoing leave by terminating her employment after she stated that she would need to attend a follow-up appointment with her doctor. Dkt. 43 ¶ 49; Dkt. 63 at 10–11. The FMLA provides a right to intermittent leave when medically necessary. *See* 29 U.S.C. § 2612(b)(1) ("[L]eave [because of a serious health condition that makes the employee unable to perform the functions of the position of such employee] may be taken intermittently or on a reduced leave schedule when medically necessary."). Panzarino sufficiently asserted her FMLA right to leave in accordance with 29 C.F.R. § 825.301(b) and Goodkind company policy. *See* 29 C.F.R. § 825.301(b) (stating that an employee does not need to expressly mention the FMLA but only explain the reasons for leave as to "allow the employer to determine whether the leave qualifies under the [FMLA]."); Dkt. 57-4 at 31 (showing Goodkind company policy that lists "continuing care of a health care provider" as an example of an explanation that could "trigger FMLA leave protections").

However, the right to commence FMLA leave is not absolute, and "an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010). One way for the employer to establish such a situation is by introducing unrebutted evidence that the decisionmaker was unaware of the employee's request to commence FMLA leave. *Id.*

In *Herren v. La Petite Acad., Inc.*, the Eleventh Circuit vacated a grant of summary judgment for the employer defendant on the basis that the defendant "failed to satisfy its burden of establishing – beyond dispute – that the reason for terminating [the plaintiff's] employment was 'wholly unrelated' to [the plaintiff's] FMLA leave request." No. 22-11499, 2023 WL 4842346, at *3 (11th Cir. July 28, 2023). Although the defendants provided extensive records of plaintiff's continually unsatisfactory job performance, the court cited a lack of unrebutted evidence that establishes (1) the decisionmaker did not know about the plaintiff's request for FMLA leave, and (2) a final decision to terminate the plaintiff's employment was made before the request for FMLA leave. *Id.*[2]

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

10

In this case, Panzarino has established a prima facie case of FMLA interference: she requested leave and was dismissed before she could take that leave. It is therefore the Defendants' burden to show that Panzarino's dismissal was "wholly unrelated" to her request for FMLA leave. Like *Herren*, this Court does not find that burden to be met beyond dispute.

First, although the record reflects that Panzarino only communicated her follow-up doctor's appointment with Goodkind's HR personnel, Dkt. 63-3 at 1; Dkt. 63-1 at 69:15–70:10, Defendants present no evidence that Tsaroya was unaware of Panzarino's request for additional leave on May 12, 2023. Second, the timing of a final decision on Panzarino's dismissal is shrouded with conflicting accounts in the record. Defendants had considered terminating Panzarino's employment as early as January 2023 for perceived communication and performance issues. *See* Dkt. 63-9. Indeed, Enzo stopped conducting business with Panzarino around October 2022, Dkt. 64 ¶ 45, and emails between Tsaroya and HR in January 2023 note Panzarino's lack of productivity and poor communication skills. *See* Dkt. 63-9 at 1–2 ("I do not think she has much on billing . . . and she has bad attitude across the board.").

However, in Tsaroya's sworn EEOC statement, he states that the reason for not terminating Panzarino's employment in January 2023 was "to give Ms. Panzarino another chance," Dkt. 63-6 ¶ 16, while in his March 2023 summary judgment affidavit, he states that the reason was "because there were significant

account receivables with Enzo that needed to be collected for which Panzarino was responsible." Dkt. 57-9 ¶ 36. Conflicting testimony as to a material fact creates a triable issue of credibility. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) ("Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all."). Indeed, the fact that Panzarino was fired in May 2023, despite the Enzo payments being settled in March 2023, creates a factual dispute as to whether Defendants' more recent explanation for deferring Panzarino's dismissal is credible, especially since Panzarino was not included in the additional round of layoffs in April 2023. Dkt. 64 ¶ 19. The uncertainties in the record as to the timing of a final decision to terminate Panzarino's employment, paired with the lack of evidence showing Tsaroya was unaware of Panzarino's request for additional leave, create genuine issues of material fact as it relates to Defendants' claim that Panzarino would have been dismissed regardless of her request for FMLA leave. Because a jury must resolve these factual disputes, Defendants' motion for summary judgment is denied as to FMLA interference in Count I.

## II.     FMLA Retaliation

"To prove FMLA retaliation, an employee must show that his employer *intentionally* discriminated against him for exercising an FMLA right." *Martin v.*

*Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008). The plaintiff may introduce direct evidence to demonstrate retaliation. *Id.* at 1268. "Direct evidence reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee," and if believed, "proves the existence of a fact without inference or presumption." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (citation modified).

In retaliation cases where a plaintiff can only point to circumstantial evidence, courts have historically applied the *McDonnell Douglas* burden-shifting framework. *See Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023). The plaintiff may build a prima facie case by showing she (1) engaged in protected conduct, (2) suffered an adverse employment action, and (3) there is a causal relation between the two events, at which point the burden shifts to the defendant to proffer a non-discriminatory reason for the adverse action, followed by a return of the burden to the plaintiff to demonstrate that the non-discriminatory reason is pretextual. *Id.* This, however, was a rigid standard that created confusion as to what circumstantial evidence would allow a plaintiff to survive summary judgment. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("However, establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment

motion in an employment discrimination case."). The Eleventh Circuit has recently clarified:

> In *Smith*, we held (1) that a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent" and (2) that a "triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."

*Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) (quoting *Smith*, 644 F.3d at 1328). As such, the "convincing mosaic" standard is simply a restatement of the Rule 56 summary judgment standard in the context of employment discrimination. *Id*. The *Ismael* court went on to explain:

> *McDonnell Douglas*, like res ipsa [loquitor], offers plaintiffs an evidentiary advantage if their case satisfies a preliminary assessment, namely, the prima facie case. If plaintiffs cannot satisfy that test, the inquiry does not end. Rather, a district court must turn to evaluate the evidence before it, applying the duly promulgated Rule 56 summary judgment standard.

*Id.* at 765. The Court will evaluate the record in accordance with these principles and "advance[s] directly to the convincing mosaic inquiry." *Id.*[3]

---

[3] The Court advances directly to the convincing mosaic inquiry since Plaintiff would likely fail to establish a prima facie case under the *McDonnell Douglas* framework. *See Ismael*, 161 F.4th at 764 ("If the plaintiff cannot establish a prima facie case, she does not automatically lose on summary judgment." (citation omitted)). Ordinarily, temporal proximity is sufficient to establish causation between an adverse employment action and a protected activity. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) ("A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." (citation omitted)). However, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Here, it is undisputed that Tsaroya contemplated Panzarino's dismissal months prior to her FMLA leave. *See* Dkt. 63-9 at 2 (showing an email from Tsaroya to HR in January 2023 describing his wish to terminate Panzarino's employment).

Here, Panzarino contends that during her termination call, Tsaroya commented that he "could not carry [her] anymore," which Panzarino believes to be "an obvious inference to her ongoing medical condition and need for [FMLA leave]." Dkt. 63 at 15. This does not constitute direct evidence of retaliation because, as Plaintiff admits, it would necessarily require an inference that the comment was related to her recent leave. *Id.* Similar reasoning applies to Panzarino's note regarding the timing of her dismissal after taking leave in May 2023, rather than in March 2023, when the Enzo payments settled. *Id.* at 16–17. Without inference or presumption, the timing alone does not prove the existence of retaliation. However, as discussed below, these aspects may instead be considered as circumstantial evidence that precludes summary judgment.

A convincing mosaic of circumstantial evidence includes "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Ismael*, 161 F.4th at 760 (quoting *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

---

Therefore, temporal proximity between Panzarino's dismissal and her FMLA leave will not establish a causal connection for a prima facie case.

15

First, while temporal proximity in this case may not suffice to establish a causal element, it still speaks to suspicious timing when viewed in the light most favorable to the nonmovant. Panzarino notes that, while the proffered reason for postponing her dismissal in January was that Goodkind was awaiting receivables from the Enzo account, Dkt. 57-9 ¶ 36, those payments were settled in March 2023, Dkt. 63-8 at 1–2, and Panzarino was not dismissed until May 2023, after she took FMLA leave. Dkt. 64 ¶¶ 71–72. Moreover, Goodkind conducted a round of firings in April 2023, which did not include Panzarino. *Id.* ¶ 19. Panzarino contends that if Defendants truly wished to fire her according to their proffered reasons, they should have done it during the April 2023 round. Dkt. 63 at 16–17. Neither the record nor Defendants' reply provides an explanation for these observations.

Additionally, as mentioned above, Tsaroya offers two different explanations for why Panzarino's dismissal was deferred. *See* Dkt. 63-6 ¶ 16 (stating Goodkind "decided to give Ms. Panzarino another chance"); Dkt. 57-9 ¶ 36 ("[T]he decision was made not to terminate [Plaintiff's] employment in January 2023 because there were significant account receivables with Enzo that needed to be collected for which Panzarino was responsible."). These inconsistencies present issues concerning Defendants' asserted legitimate reasons for Panzarino's dismissal. *See Tippens*, 805 F.2d at 954 ("Variations in a witness's testimony and any failure of memory

16

throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all.").

Second, Panzarino asserts that Tsaroya said that he and Goodkind "could not carry [her] anymore" during her termination call, Dkt. 63 at 4–5, which is an ambiguous statement. Panzarino understood this statement to be in relation to her hospitalization:

> Q: And was it your understanding that when Mr. Tsaroya said that to you, that he could not carry you anymore, that he was referring to the fact that you had been hospitalized and not working? . . .
>
> A: Yes.

Dkt. 63-1 at 96:1–8. Conversely, Tsaroya "do[es] not recall" making such a statement during the termination call. Dkt. 63-5 at 46:20–23. A trier of fact is needed to make a credibility determination as to whether this statement was actually made and, if so, what Tsaroya intended by it. *See Combs v. King*, 764 F.2d 818, 827 (11th Cir. 1985) (holding that summary judgment is improper when there are conflicting versions of material facts and competing factual inferences).

In light of the foregoing and viewing these facts in the light most favorable to Plaintiff, the Court finds Plaintiff has presented a convincing mosaic of circumstantial evidence that creates a genuine issue of whether Defendants retaliated against her for taking FMLA leave. The evidence before the Court is not purely speculative and not so sparse that no reasonable jury could find in favor of Plaintiff.

17

Therefore, Defendants' motion for summary judgment is denied as to FMLA retaliation in Count II.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant the Goodkind Group's Motion for Summary Judgment, Dkt. 60, is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida, on June 25, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

18